# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

|  |  |
|---|---|
| SAJEESH KUMAR KAMALA RAGHAVAN, ) ) ) ) Plaintiff, ) ) v. ) ) REMMIA SUKAPURATH et al., ) ) Defendants. ) | No. 2:25-cv-02710-MSN-atc |

## REPORT AND RECOMMENDATION FOR DENIAL OF INJUNCTIVE RELIEF AND FOR *SUA SPONTE* DISMISSAL

On July 11, 2025, Plaintiff Sajeesh Kumar Kamala Raghavan filed a *pro se* Complaint (ECF No. 2) and Motion for Emergency Injunctive Relief (ECF No. 4). Raghavan also filed an Emergency Motion for Temporary Restraining Order on July 29, 2025. (ECF No. 9.) Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States Magistrate Judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.[1]

For the following reasons, it is recommended that the Motion for Emergency Injunctive Relief and Emergency Motion for Temporary Restraining order be denied and this matter be dismissed *sua sponte* for lack of subject matter jurisdiction.

---

[1] A motion for a preliminary injunction is considered a dispositive motion and thus requires disposition by report and recommendation. *See* 28 U.S.C. § 636(b)(1)(A), (B); *Vogel v. U.S. Off. Prod. Co.*, 258 F.3d 509, 514 (6th Cir. 2001) ("Pretrial matters that a magistrate judge is precluded from 'determining' pursuant to § 636(b)(1)(A) are called 'dispositive' because they are 'dispositive of a claim or defense of a party.'" (citing Fed. R. Civ. P. 72)).

**PROPOSED FINDINGS OF FACT**

Raghavan's claims arise from a divorce and child custody case proceeding before the Circuit Court of Shelby County, Case No. CT-4324-21 ("Divorce Proceeding"), in which Raghavan is the named defendant.  In his Complaint, Raghavan alleges various civil rights violations under 42 U.S.C. § 1983, including violations of the First and Fourteenth Amendments, infringement on his parental rights, misconduct by the guardian *ad litem* involved in the Divorce Proceeding, along with RICO violations, immigration and naturalization fraud, and financial fraud.  (*Id.* at 3–5.)  Raghavan brings these claims against Defendants Remmia Sukapurath, Barbara McCullough, Mary Driver Smith, Mindy Ross, Zoe Marshall, Fairmont Enterprises, LLC, Neeraja R. Menon, Virginia Williams, Srat Chandran, Aditi Shyam, Sudhir Kurup, and John/Jane Does 1–10.  (*Id.* at 1.)  Defendant Remmia Sukapurath is Raghavan's ex-wife, and he identifies the remaining defendants as "attorneys, agents, shell entity, [guardian ad litem], stepdaughter, and others alleged to have participated in the misconduct."  (*Id.* at 2.)

Raghavan asserts several allegations of misconduct by Defendants arising out of the Divorce Proceeding.  First, he alleges that Defendants violated his First and Fourteenth Amendment rights by scheduling a hearing in the Divorce Proceeding during his religious pilgrimage.  (*Id.*)  He further contends that Defendants attempted to effectuate "an $85k undervalued short sale" of his home and improperly inflated "garnishments on the closing disclosure (to $76,856.69)."  (*Id.*)  Raghavan also claims that Defendants "obstructed reunification therapy by insisting on a non-functional counselor" and pressured him "to sell ancestral/non-marital Indian property without verifying title."  (*Id.*)  Finally, Raghavan alleges that the court-appointed guardian *ad litem* "failed to conduct an impartial investigation," that his ex-wife "obtained U.S. citizenship through material representation," and that his ex-wife "and

partner Biju Antony engaged in financial schemes." (*Id.* at 2–3.) Raghavan seeks declaratory, injunctive, and monetary relief. (*Id.* at 1.)

By way of context, the state court entered a Final Decree of Divorce ("Final Decree") in the Divorce Proceeding on October 4, 2024, deeming eight parcels of real estate in India as "marital property" and ordering that the parcels be listed for sale. *Sukapurath v. Raghavan*, No. CT-4323-21, Final Decree, at 3 (Tenn. Cir. Ct. Shelby Cnty. Oct. 4, 2024). Raghavan apparently refused to sign or produce the necessary documents to effectuate the sale of the parcels. *Sukapurath*, No. CT-4323-21, Order Granting Plaintiff's Second Petition for Civil Contempt, at 8 (Tenn. Cir. Ct. Shelby Cnty. Feb. 10, 2025). A hearing was held on February 4, 2025, at which the state court held Raghavan in civil contempt for refusing to execute the documents and sentenced him to incarceration unless he did so by February 19, 2025. *Id.* at 1, 9. Immediately thereafter, Raghavan filed for bankruptcy, and the Divorce Proceeding was stayed pending resolution of the bankruptcy proceedings. *Sukapurath*, No. CT-4323-21, Order (Tenn. Cir. Ct. Shelby Cnty. Feb. 11, 2025). On April 11, 2025, the stay was lifted. *Sukapurath*, No. CT-4323-21, Notice of Order of Bankruptcy Court Lifting Stay, at 1 (Tenn. Cir. Ct. Shelby Cnty. Apr. 11, 2025).

The Divorce Proceeding was set for hearing on July 21st regarding the contempt issue.[2] Raghavan then filed his request for injunctive relief in this Court, asking to stay "any enforcement of orders or proceedings" in the Divorce Proceeding "relating to the sale, transfer, or encumbrance of foreign property scheduled for hearing on July 21, 2025," and to enjoin Defendants from compelling him to sign "any Power of Attorney or related documents

---

[2] Raghavan failed to appear for the hearing on July 21st, so the hearing was reset to July 23, 2025. *Sukapurath*, No. CT-4323-21, Order on Court Hearing Held on July 21, 2025, at 3 (Tenn. Cir. Ct. Shelby Cnty. July 22, 2025).

3

concerning such foreign property pending resolution of this federal action." (ECF No. 4, at 3.) After the hearing, Raghavan filed another request for injunctive relief, seeking to enjoin Defendants from "taking any action to use, enforce, notarize, file, transmit, or rely upon" the documents Raghavan was allegedly coerced, by order of contempt, to sign to effectuate the sale of the India property under threat of arrest. (ECF No. 9, at 2.)

## PROPOSED CONCLUSIONS OF LAW

Raghavan's motions for injunctive relief should be denied and this case should be dismissed *sua sponte* because he has failed to allege facts that establish this Court's subject matter jurisdiction over this action. In fact, Raghavan's alleged facts conclusively establish that this Court lacks subject matter jurisdiction over this case because the claims are barred by the domestic-relations exception to federal jurisdiction, the *Rooker–Feldman* doctrine, and/or *Younger* abstention.

**I.    Standards of Review**

    A.    Subject Matter Jurisdiction

"A complaint is subject to dismissal under Rule 12(b)(1) if the facts, accepted as true and viewed in the light most favorable to the plaintiff, show that the court lacks subject-matter jurisdiction." *Nesselrode v. Sec'y of U.S. Dep't of Educ.*, No. 17-4206, 2018 WL 6975166, at *2 (6th Cir. June 18, 2018). "*Pro se* complaints are held to less stringent standards than formal pleadings drafted by lawyers and are thus liberally construed." *Woodson v. Woodson*, No. 2:22-mc-00003-TLP-tmp, 2022 WL 16985602, at *2 (W.D. Tenn. Feb. 18, 2022), *report and recommendation adopted*, 2022 WL 16963997 (W.D. Tenn. Nov. 16, 2022) (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "Even so, *pro se* litigants must adhere to the Federal

4

Rules of Civil Procedure, . . . and the court cannot create a claim that has not been spelled out in a pleading." *Id.* (citations omitted).

"At any time in a case and of its own volition, a district court may examine whether a complaint lacks subject matter jurisdiction." *Coleman v. Juv. Ct. of Memphis & Shelby Cnty. TN*, No. 2:17-cv-2524-SHL-tmp, 2017 WL 10607262, at *2 (W.D. Tenn. Aug. 29, 2017), *report and recommendation adopted*, No. 2:17-cv-02524-SHL-tmp, 2018 WL 5298155 (W.D. Tenn. Oct. 25, 2018), *aff'd sub nom. Coleman v. Juv. Ct. of Memphis*, No. 18-6245, 2019 WL 2298965 (6th Cir. Apr. 10, 2019); *see also Coleman v. Juvenile Court of Memphis*, No. 18-6245, 2019 WL 2298965, at *1 (6th Cir. Apr. 10, 2019) (affirming *sua sponte* dismissal of the complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine); *Squire v. Coughlan*, 469 F.3d 551, 555–56 (6th Cir. 2006) (affirming *sua sponte* dismissal of the complaint for lack of subject matter jurisdiction under *Younger* abstention).

    B.    <u>Injunctive Relief</u>

"A preliminary injunction is an 'extraordinary remedy,' not a matter of right." *Patel v. Glenn*, No. 21-3499, 2022 WL 16647974, at *3 (6th Cir. Nov. 3, 2022) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "Preliminary injunctions that alter the status quo are specifically disfavored." *Eads v. Tennessee*, No. 1:18-cv-00042, 2019 WL 2443125, at *1 (M.D. Tenn. June 12, 2019) (citing *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1259 (10th Cir. 2005)).

"To secure a preliminary injunction, a plaintiff 'must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that

the balance of equities tips in his favor, and that an injunction is in the public interest.'" *EOG Res., Inc. v. Lucky Land Mgmt., LLC*, 134 F.4th 868, 874 (6th Cir. Apr. 14, 2025) (quoting *Winter*, 555 U.S. at 20). "Because a preliminary injunction 'is an extraordinary equitable remedy that is never awarded as of right,' the plaintiff must make a 'clear showing' that these factors favor him." *Id.* (quoting *Starbucks Corp. v. McKinney*, 602 U.S. 339, 345–46 (2024)); *see also Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) ("[T]he proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion, for example."). The factors are balanced against each other, and proving all four is not necessary to secure a preliminary injunction. *United Food & Com. Workers Union, Loc. 1099 v. Sw. Ohio Reg'l Transit Auth.*, 163 F.3d 341, 347 (6th Cir. 1998)).

Notwithstanding that balancing, "a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Mich. St. AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997)). "The Sixth Circuit has stated that the district court need not 'make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue.'" *Doe v. Rhodes Coll.*, No. 2:16-cv-02308-JTF-tmp, 2016 WL 11611619, at *4 (W.D. Tenn. Oct. 25, 2016) (quoting *Jones v. City of Monroe, Mich.*, 341 F.3d 474, 476 (6th Cir. 2003)).

"[W]here facts are bitterly contested and credibility determinations must be made to decide whether injunctive relief should issue, an evidentiary hearing must be held. [However,] where material facts are not in dispute, or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir.

6

2007) (quoting *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1312–13 (11th Cir. 1998)); *see also Harris v. Wells Fargo Bank, N.A.*, No. 2:18-cv-2400-JPM-dkv, 2018 WL 4896727, at *1 (W.D. Tenn. Oct. 9, 2018) ("A preliminary injunction may be granted based on less formal procedures and on less extensive evidence than in a trial on the merits, but if there are genuine issues of material fact raised in opposition to a motion for a preliminary injunction, an evidentiary hearing is required." (quoting *Cobell v. Norton*, 391 F.3d 251, 261 (D.C. Cir. 2004))).

**II.     Dismissal for Lack of Subject Matter Jurisdiction**

Raghavan's claims should be dismissed for lack of subject matter jurisdiction under the domestic-relations exception, the *Rooker–Feldman* doctrine, the Anti-Injunction Act, and/or *Younger* abstention.  The current status of the Divorce Proceeding is unclear: Raghavan's submissions reveal that a Final Decree was entered on October 4, 2024, but there have been a number of post-judgment proceedings relating to Raghavan's civil contempt since then.  If it has concluded, the *Rooker-Feldman* doctrine is implicated; if not, the Anti-Injunction Act and *Younger* abstention are implicated.

     A.     <u>The Domestic-Relations Exception to Federal Jurisdiction</u>

This Court lacks jurisdiction over this case because federal courts have no "subject matter jurisdiction over 'domestic relations disputes involving child custody or divorce.'" *Dep't of Childs. Servs. v. Cleaves-Farris*, No. 2:22-cv-02197-TLP-tmp, 2022 WL 16963241, at *1 (W.D. Tenn. Nov. 16, 2022) (quoting Partridge v. Ohio, 79 F. App'x 844, 845 (6th Cir. 2003)); *see also Danforth v. Celebrezze*, 76 F. App'x 615, 616 (6th Cir. 2003) ("[F]ederal courts have no jurisdiction over domestic relations matters."). "[T]he 'domestic relations exception' to federal jurisdiction 'divests the federal courts of power to issue divorce, alimony, and child custody decrees.'" *Starnes v. Starnes*, 2:25-CV-138-DCLC-crw, 2025 WL 2965131, at *2 (E.D. Tenn.

7

Oct. 20, 2025) (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)). "This exception recognizes that 'the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States.'" *Id.* (quoting *In re Burrus*, 136 U.S. 586, 593–94 (1980)).

"Although this domestic relations exception to federal jurisdiction does not apply to a civil action that merely has domestic relations overtones, federal courts lack jurisdiction where the action is a mere pretense, and the suit is actually concerned with domestic relation issues." *Landon v. Cnty. of Daviess Fam. Ct.*, No. 4:20-cv-19-JHM, 2020 WL 1066996, at *2 (W.D. Ky. Mar. 5, 2020) (quoting *Danforth*, 76 F. App'x at 616). "In determining whether the domestic relations exception applies, 'we must focus on the remedy that the plaintiff seeks: Does the plaintiff seek an issuance or modification or enforcement of a divorce, alimony, or child-custody decree?'" *Id.* (quoting *Chevalier v. Est. of Barnhart*, 803 F.3d 789, 797 (6th Cir. 2015)). If so, then the federal court lacks subject matter jurisdiction, and the case must be remanded. *See Starnes*, 2025 WL 2965131, at *2 ("Defendant's attempt to invoke federal jurisdiction fails. This Court lacks jurisdiction over a contested parenting plan and state custody order pending in [Tennessee state court].").

In this case, it is indisputable that Raghavan seeks to invoke this Court's jurisdiction to challenge state-court enforcement and contempt orders regarding the disposition of marital property pursuant to the Final Decree. Raghavan seeks, for example, an order enjoining Defendants from "[e]ngaging in any conduct designed to obtain control or access to [his] assets, legal rights, or identity through intimidation or threat." (ECF No. 9, at 1.) This case therefore falls squarely within the domestic-relations exception to federal subject matter jurisdiction and should be dismissed *sua sponte*. Because the undersigned concludes that the Court lacks subject

8

matter jurisdiction, the Court further recommends that Raghavan's motions for injunctive relief (ECF Nos. 4, 9) be denied because he has no chance of success on the merits of his claims. *See Bleavins v. O'Neal*, No. 2:22-cv-02178-TLP-cgc, 2022 WL 885176, at *6 (W.D. Tenn. Mar. 24, 2022) (denying motions for injunctive relief for having no chance of success on the merits and dismissing the case for lack of subject matter jurisdiction under *Younger* abstention because "[t]he Court . . . lacks jurisdiction to even entertain Plaintiffs' claims").

      B.      *Rooker–Feldman* Doctrine

"The [*Rooker–Feldman*] doctrine—coming from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)—restricts federal courts from hearing claims seeking 'relief from injury caused by the state court judgment.'" *Robinson v. Tansley*, No. 2:23-cv-02589-SHL-atc, 2024 WL 4151160, at *7 (W.D. Tenn. Sept. 11, 2024) (quoting *In re Hamilton*, 540 F.3d 367, 371–72 (6th Cir. 2008)). "The *Rooker–Feldman* doctrine prohibits federal district courts from 'consider[ing] cases brought by state-court losers complaining of injuries caused by state-court judgments.'" *Harvison v. Little*, No.: 1:22-cv-01103-JDB-jay, 2023 WL 3147905, at *2 (W.D. Tenn. Apr. 28, 2023) (quoting *Larry E. Parrish, P.C. v. Bennett*, 989 F.3d 452, 455 (6th Cir. 2021)). "The doctrine is derived from 28 U.S.C. § 1257, which 'vests sole jurisdiction to conduct[] appellate review of final state-court judgments in the Supreme Court.'" *Id.* (quoting *Bennett*, 989 F.3d at 456).

"To ascertain whether the doctrine applies, the Court 'look[s] to the source of the injury the plaintiff alleges in the federal complaint.'" *Harvison*, 2023 WL 3147905, at *2 (quoting *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020)). "Other than the Supreme Court of the United States, federal courts are barred from exercising appellate jurisdiction over state courts' decisions and proceedings, 'including claims that are "inextricably

9

intertwined" with issues decided in state court proceedings.'" *Robinson*, 2024 WL 4151160, at *7 (quoting *Exec. Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 793 (6th Cir. 2004)). In making this determination, "Plaintiffs' subjective characterization of their claims is not determinative. The court must determine whether *Rooker–Feldman* bars a claim 'by looking to the source of the injury the plaintiff alleges in the federal complaint.'" *Penn v. Ogg*, No. 1:14-cv-762014, 2014 WL 4450038, at *4 (S.D. Ohio Sept. 10, 2014) (quoting *Evans v. Cordray*, 424 F. App'x 537, 538 (6th Cir. 2001)) (citations omitted) (finding that the *Rooker–Feldman* doctrine applied, even though the plaintiffs couched their federal case in terms of fraud and constitutional violations, because it is the state-court proceeding and "corresponding judgment entry against Plaintiffs that is the source of the injury alleged in the federal complaint . . . . This is precisely the type of claim that is barred by *Rooker–Feldman*."); *see also Hicks-Nichols v. Goodstein*, 2:23-cv-10771-TGB-eas, 2023 WL 3186945, at *2 (E.D. Mich. May 1, 2023) (dismissing under *Rooker–Feldman*, even though the plaintiff made fraud and § 1983 claims, because the claims all challenged state-court proceedings); *Cunningham v. Dep't of Child.'s Servs.*, 842 F. App'x 959, 963–64 (6th Cir. 2021) (finding that the *Rooker–Feldman* doctrine barred consideration in federal court of a mother's child-custody-related claims that the state court judge violated the Constitution by acting outside of the juvenile court's jurisdiction).

When the claims in a subsequent federal case essentially seek to set aside a state-court judgment and are "the functional equivalent of an appeal from a state court judgment," the *Rooker–Feldman* doctrine applies, and the federal court lacks subject matter jurisdiction. *Untied v. CIT Grp. Consumer Fin., Inc.*, 23 F. App'x 233, 234–35 (6th. Cir. 2001) ("The district court appropriately concluded that it lacked jurisdiction over Untied's complaint because the claims challenged the adequacy and result of state court proceedings that resolved the foreclosure sale of

the subject property."); *see also Lee v. Carroll Cnty. Child Protective Servs.*, No. 1:25-cv-02595-JDB-jay, 2025 WL 2267951, at *2 (W.D. Tenn. July 1, 2025), *report and recommendation adopted*, 2025 WL 2263452 (W.D. Tenn. Aug. 7, 2025) (dismissing the case for lack of subject matter jurisdiction under, among other things, the *Rooker–Feldman* doctrine because seeking to overturn the state court's custody rulings would be "essentially appealing the state court's custody decision in a federal court. *Rooker-Feldman* bars exactly that." (quoting *Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 308 (6th Cir. 2010), for the proposition that a plaintiff cannot seek "review or reversal of the decision of the juvenile court to award temporary custody to the state" and citing *Evans v. Klaeger*, 12 F. App'x 326, 327 (6th Cir. 2001), for the proposition that a request for declaratory relief was barred by *Rooker–Feldman* where the plaintiff wanted the federal court to declare that the state court custody decision violated his Fourteenth Amendment rights to equal protection and substantive due process)); *Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 489–90 (6th Cir. 2005) (affirming dismissal because, "[b]esides being utterly frivolous, the plaintiffs' claims are predicated on their conviction that the state courts were wrong and, therefore, satisfy the very definition of a case requiring *Rooker–Feldman* abstention" (quotation omitted)).

At its core, this case is the functional equivalent of an appeal from the Divorce Proceeding and an attempt to collaterally attack issues that have been determined by the state court. Because the *Rooker–Feldman* doctrine prohibits federal district courts from "consider[ing] cases brought by state-court losers complaining of injuries caused by state-court judgments," *Bennett*, 989 F.3d at 455, this Court is barred from considering Raghavan's claims.

11

C.     Anti-Injunction Act

To the extent Raghavan seeks a stay of ongoing state-court proceedings, that request is barred by the Anti-Injunction Act, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. None of the listed exceptions apply here. As to the first, Raghavan has not identified any applicable Congressional authorization for this Court to enjoin state-court divorce actions. As to the second, "[c]ourts have applied this . . . exception in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (citations omitted). Neither of those scenarios applies here. And as to the third exception, no prior federal judgment regarding the subject matter of the Divorce Proceeding exists to effectuate. The Anti-Injunction Act thus prohibits any stay of Raghavan's state-court proceedings.

D.     *Younger* Abstention

Finally, to the extent Raghavan seeks to have this Court otherwise interfere with ongoing state-court proceedings, including enjoining the state court from enforcing the Final Decree and contempt orders against him, the Court should abstain from exercising jurisdiction. "Under *Younger* abstention, absent unusual circumstances . . . , a federal court must decline to interfere with pending state civil or criminal proceedings when important state interests are involved." *O'Neill v. Coughlan*, 511 F.3d 638, 641 (6th Cir. 2008) (citing, e.g., *Younger v. Harris*, 401 U.S. 37, 41, 91 (1971)). Three factors indicate whether *Younger* abstention is appropriate: "(1) there must be on-going state judicial proceedings; (2) those proceedings must implicate important state

interests; and (3) there must be an adequate opportunity in the state proceedings to raise constitutional challenges." *Id.* at 643 (quoting *Sun Refin. & Mktg. Co. v. Brennan*, 921 F.2d 635, 639 (6th Cir. 1990)).

As to the first consideration, it appears the Divorce Proceeding may be ongoing, at least to the extent that the state court has held Raghavan in contempt for his willful refusal to comply with the Final Decree's mandates. (ECF No. 9-3, at 3.) As to the second consideration, a divorce proceeding implicates an important state interest. *Bunting ex rel. Gray v. Gray*, 2 F. App'x 443, 446 (6th Cir. 2001) (finding that a state-court divorce proceeding, including the proper division of marital property and the enforcement of the divorce court's orders, implicates an important state interest). As to the third consideration, Raghavan has offered nothing to show that Tennessee bars litigation of federal constitutional claims in divorce proceedings, and he has not identified any legitimate constitutional concerns arising from the Divorce Proceeding. *See Robinson v. Tansley*, No. 2:23-cv-02589-SHL-atc, 2024 WL 4151160, at *5 (W.D. Tenn. Sept. 11, 2024) ("Courts presume that state courts are able to protect the interests of the federal plaintiff." (citing *Kelm v. Hyatt*, 44 F.3d. 415, 420 (6th Cir. 1995)); *Berg*, 2022 WL 17573910, at *3 (finding the third *Younger* factor satisfied when there was "no allegation that [the plaintiff] would have inadequate opportunity to raise his constitutional arguments in the custody proceeding before the Knox County Juvenile Court" and when the plaintiff had a "right to appeal any decision entered by [the Juvenile Court judge] to the Knox County Circuit Court and the right to appeal a final judgment to the Tennessee Court of Appeals"). Because the three *Younger* factors are satisfied, Raghavan must pursue this matter to completion in state court, and this Court should abstain and dismiss this case for lack of subject matter jurisdiction and deny his motions for injunctive relief. *See Bleavins*, 2022 WL 885176, at *6 (denying motions for

13

injunctive relief for having no chance of success on the merits and dismissing the case for lack of subject matter jurisdiction under *Younger* abstention because "[t]he Court . . . lacks jurisdiction to even entertain Plaintiffs' claims").

## **RECOMMENDATION**

For the foregoing reasons, the Court recommends that Raghavan's motions for injunctive relief be denied and that this case be dismissed *sua sponte* for lack of subject matter jurisdiction.

Respectfully submitted this 27th day of January, 2026.

> s/Annie T. Christoff
> ANNIE T. CHRISTOFF
> UNITED STATES MAGISTRATE JUDGE

## **NOTICE**

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations. A party may respond to another party's objections within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Failure to file objections within fourteen (14) days may constitute forfeiture/waiver of objections, exceptions, and further appeal.